## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JONATHAN D. CARTER** | **CIVIL ACTION** |
| **VERSUS** | **NO: 12-1545** |
| **HORNBECK OFFSHORE TRANSPORTATION, LLC, ET AL.** | **SECTION: "K" (4)** |

## ORDER

Before the Court is Defendant, Hornbeck Offshore Transportation LLC and Hornbeck Offshore Operators, LLC's (collectively "Defendants") **Motion to Compel the Independent Medical Examination of Plaintiff Jonathon Carter (R. Doc. 49)** seeking an Order from this Court to order Plaintiff, Jonathon Carter ("Plaintiff") to appear for an independent medical examination ("IME") pursuant to Federal Rules of Civil Procedure ("Rule") 35(a). *Id.* The motion is opposed (R. Doc. 54). It was heard by oral argument on December 4, 2013.

## I.     Background

This suit was instituted by Plaintiff pursuant to the Jones Act, 46 U.S.C. § 30104, Admiralty and General Maritime Laws of the United States, as well as pursuant to 28 U.S.C.§ 1333.  (R. Doc. 1).  Plaintiff alleges that while he was in the course and scope of employment for Defendant, he sustained permanent and serious bodily injuries while onboard the Hornbeck ENERGY 13501. (R. Doc. 49-1, p. 1). Specifically, Plaintiff alleges that on July 14, 2009, at Hornbeck's Brooklyn yard, he injured his lower back when he assisted in the removal of a ballast pump for repairs onboard the vessel. (R. Doc. 1, p. 2, ¶ 4).

Defendants represent that Plaintiff has undergone treatment and or visited Dr. Sid Bailey of North Louisiana Orthopaedic and Sports Medicine Clinic in Monroe, Louisiana; Dr. Anil Nanda of Louisiana State University Health Science Center in Shreveport, Louisiana; and Dr. Douglass Brown

from the date of his alleged injury through November 19, 2010. *See* R. Doc. 49-1, p. 5. Defendants contend that Dr. Nanda recommended and performed a lumbar discectomy of L4-5 level on May 17, 2010. *Id.* at 4. On November 19, Dr. Nanda allegedly conducted his final examination of Plaintiff, where he was reported at being at maximum medical improvement ("MMI"), recommending a functional capacity evaluation ("FCE") and that Plaintiff return to work. *Id.*

In April 2011, Plaintiff obtained an FCE at the direction of his attorney, which allegedly revealed that he would be able to function at "medium level employment" with lifting restrictions between 50 - 65 lbs. *Id.* Defendants contend that after Plaintiff applied for and obtained employment with Graphic Packaging International in Monroe, Louisiana, he did not seek treatment for his lumbar spine again, until August 2011. *Id.* at 5.

On August 29, 2011, he saw Dr. Jose Ferrer of North Louisiana Orthopaedic & Sports Medicine Clinic of Monroe, Louisiana, where he allegedly confirmed an earlier back surgery, but reported that he had been doing well otherwise. *See* R. Doc. 49-1, p. 5. Plaintiff allegedly sought treatment from Dr. Ferrer again in August, September and November, 2011. *Id.* Defendants represent that in August 2011, Dr. Ferrer recommended physical therapy, foraminal injections, and if the injections did not work, "surgery would be considered." *Id.*

On September 7, 2011, Defendants represent that "Dr. Ferrer noted that plaintiff needed revision surgery and a fusion at the L4-5 and L5-S1 levels, but that the plaintiff wanted to proceed to with foraminal blocks to see if that provided relief. Dr. Ferrer ordered reevaluation in 6 weeks and 'if he is not improved, the next day we will do surgery'." *Id.* at 5-6.

Thereafter, on September 27, 2011, Defendants represent that plaintiff underwent a selective nerve root injection with Dr. Vincent Forte of Louisiana Pain Care in Monroe, Louisiana. *Id.* at 6. Plaintiff allegedly followed up with Dr. Forte on October 26, 2011, and informed the doctor that "his

pain [was] essentially resolved, except [while] he work[ed], depending upon what [was] required for him at his job [as that] may exacerbate his symptomologies." *Id.* Dr. Forte allegedly also noted, "presently, he's not on any medications from our office and continues to do well." *Id.* Defendants contend that after the September 27, 2011 injections, Dr. Ferrer did not re-schedule or re-recommend surgery, nor did Plaintiff ever return to Dr. Ferrer. *Id.*

On November 18, 2011, Defendants contend that it received correspondence from counsel for Plaintiff which stated that Plaintiff "has been in pain, post op since the back operation he underwent May 15, 2010." *See* R. Doc. 49-2, p. 1. Counsel for Plaintiff also stated that plaintiff was cut off of maintenance and cure by Defendants, and that if his condition continued to worsen, he would be forced to resign his position at Graphic Packaging International, and request reinstatement of "cure" benefits from Defendants. *Id.*

On June 18, 2012, Plaintiff filed the instant action against Defendants seeking general compensatory damages, personal injury damages, punitive damages, as well as reinstatement of present and past maintenance and cure benefits which may be owed to him. *See* R. Doc. 1, p. 4-5, ¶¶ 12-13. Defendants contend that from the November 18, 2011 visit Plaintiff did not treat with Dr. Ferrer again until June 21, 2013, where he allegedly recommended surgical intervention. *See* R. Doc. 49-1, p. 8.

In April, 2013, this Court issued a scheduling order in this matter, setting forth the deadlines for all pretrial motions to be filed **no later than October 15, 2013,** to permit hearing before **October 30, 2013.** *See* R. Doc. 19, p. 2-3. It further provided that all discovery and depositions were to be taken and completed no later than October 21, 2013. *Id.*

As to the instant motion, Defendants contend that it is entitled to a third IME of Plaintiff because it contends that until the deposition of Dr. Ferrer, on October 14, 2013, and written report

he issued on November 14, 2013, they did not know that Plaintiff's L5-S1 condition remained unchanged and caused from the July 14, 2009 incident. *See* R. Doc. 49-1, p. 9. Defendants also represent that until November 14, 2013, they were unaware that they were responsible for "cure" benefits or that surgical intervention was recommended. *Id.* at 10. As such, Defendants seek an order from this Court compelling Plaintiff to undergo a third IME with Dr. Douglas Brown in Monroe, Louisiana. *Id.*

## II.   Standard of Review

Rule 35 provides in pertinent part that a court may order a party "to submit to a physical or mental examination by a suitably licensed or certified examiner" when the mental or physical condition of that party is in controversy. Fed. R. Civ. P. 35(a)(1). The court may issue such an order "on motion for good cause and upon notice to all parties and the person to be examined" which specifies "the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(2).

Thus, there is a two-part test for determining whether the motion will be granted. First, the physical or mental state of the party must be in controversy. Second, the moving party must show good cause as to why the motion should be granted. *Schlagenhauf v. Holder*, 379 U.S. 104, 106 (1964). "Good cause" requires a showing of specific facts that demonstrate the need for the information sought and lack of means for obtaining it elsewhere. *Id.* at 118. A "plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Id.* at 119.

"The decision as to whether or not to order an independent medical examination under Rule 35(a) rests in the court's sound discretion." *Glaze v. Bud's Boat Rental, Inc.*, No. 93-1334, 1993

WL 441890, at *1 (E.D. La. Oct. 21, 1993) (citing *Cola-Cola Bottling v. Torres*, 255 F.2d 149 (5th

Cir. 1958). Furthermore, "[a]lthough Rule 35 examinations may be ordered 'only on motion for

good cause shown,' and use of the rule to compel such examinations is not unfettered, Rule 35(a)

generally has been construed liberally in favor of granting discovery." *Grossie v. Fla. Marine*

*Transporters, Inc.*, No. 04-0699, 2006 WL 2547047, at *2 (W.D. La. Aug. 31, 2006).

### III.   Analysis

Defendants contend that "good cause" exists to warrant a third IME of Plaintiff, because they

argue that they were not aware that Dr. Ferrer still recommended surgical intervention for Plaintiff

until his deposition on October 14, 2013. *See* R. Doc. 49-1, p. 12. Furthermore, Defendants argue

that they were also not aware that they were required to pay "cure" benefits until Plaintiff allegedly

requested it do so on November 18, 2013. *See* R. Doc. 49-1, p. 12. As such, they request this Court

compel Plaintiff to attend a third IME to determine whether surgery is necessary. *Id.*

In opposition, Plaintiffs contend that Defendants were repeatedly put on notice that Plaintiff

needed additional medical treatment, and that he was potentially no longer at MMI. *See* R. Doc. 54,

p. 11. Furthermore, Plaintiff contends that Defendants were put on notice from his original

complaint, as well as records allegedly sent to them on December 28, 2012, that he sought

maintenance and cure from Defendants in the event his condition worsened. *Id.* Plaintiff also

contends that he has already submitted to two independent medical examinations in this matter, and

that a third is not warranted because defendants have failed to show good cause as to why it should

be entitled to such request. *Id.* at 15.

Rule 16(b) states that a party seeking to modify a scheduling order after the deadlines have

expired, must show good cause.  *Howell v. Standard Motor Products, Inc.,* 2001 WL 196969, at *1

(N.D. Tex. Feb. 26, 2001); *see also, Matias v. Taylors Intern. Serv's, Inc.,* 2010 WL 3825402, at *3

(E.D. La. Sept. 24, 2010); *S & W Enters.,* 315 F.3d at 536; *Valcho v. Dallas County Hosp. Dist.*, 658 F.Supp.2d 802, 814 (N.D. Tex. 2009) ("when as here, the deadline for [filing] pleadings has expired, a court . . . must first determine whether to modify the scheduling order under the good cause standard for [Rule] 16(b)").

The good cause standard focuses on the diligence of the party seeking to modify the scheduling order, and the absence of prejudice to the nonmoving party alone will not constitute good cause under Rule 16(b). *Howell,* at *1; (citing *Am. Tourmaline Fields v. Int'l Paper Co.,* 1998 WL 874825, at *1. Likewise, the mere inadvertence by the movant does not satisfy the good cause requirement. *See id.* Instead, the moving party may "demonstrate good cause by showing that, despite his diligence, he could not have met the scheduling deadline." *Howell,* at *1; *McCombs v. Allwaste Recovery Sys.,* 1999 WL 102816 at *2; *Am. Tourmaline Fields,* at *1 (internal citations omitted).

This Court's scheduling order set forth the deadlines for all pretrial motions as October 15, 2013. Defendants filed the instant motion on November 22, 2013, more than a month after the deadlines for filing pretrial motions expired on October 15, 2013. *See* R. Doc. 19, p. 2-3. Although Defendants contend that this was the first time they were "informed Dr. Ferrer continued to recommend surgery."

During the hearing, counsel for Plaintiff indicated that Defendants received Dr. Ferrer's records in December 2012, which included a surgical recommendation. Counsel for the Defendant acknowledged upon questioning by the Court that the condition of his back is also an issue under the unseaworthiness and maritime negligence claim. Considering that Defendant had possession of the Plaintiff's medicals for approximately a year before the deadline, the Court is not persuaded by the suggestion that it found out about the continued pending maintenance and cure claim recently,

and that it forms the basis for the request for a third IME. As such, the Court finds that Defendants

have failed to present good cause as to why they did not timely seek court intervention to schedule

an IME of Plaintiff before November 22, 2013.

Accordingly,

**IT IS ORDERED** that Defendants, Hornbeck Offshore Transportation, L.L.C., and

Hornbeck Offshore Operators, L.L.C.'s (collectively "Defendants") **Motion to Compel the**

**Independent Medical Examination of Plaintiff Jonathon Carter (R. Doc. 49)** is **GRANTED.**

New Orleans, Louisiana, this 6th day of December 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**